**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PREMIER LABS LTD,** an Israel Corporation, And **PREMIER NORTH AMERICA INC.**, a Florida Corporation,<br><br>                                    Plaintiff,<br><br>-against-<br><br>**BEAUTY PARIS LLC D/B/A BEAUTY PARIS STORE**, a Delaware Limited Liability Company<br><br>                                    Defendant<br>                    . | _____ Civ. _____ (____) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Defendant, Beauty Paris LLC has engaged in the unauthorized reselling of products bearing Plaintiffs Trademark that are manufactured, advertised and sold by Co-Plaintiffs, Premier Labs Ltd, and Premier North America Inc.  (Collectively, "the Plaintiffs.") Plaintiffs now sue Defendant trademark infringement in violation of the Lanham Act, 25 U.S.C. §§ 1114 and (2) unfair competition under NY common law. These claims are the result of Defendant's illegal and unauthorized sale of products bearing or using Plaintiffs' Federally Registered Trademark (as defined below), devoid of quality control, service, or warranties ("Infringing Products"), thus confusing consumers on the Internet. In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws.  Fed. R. Civ. P. 4(e).  In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendant because, upon information and belief, Defendant regularly conducts, transacts and/or solicit business in New York and in this judicial district, and/or derives substantial revenue from its business transactions in New York and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of New York such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process, and/or Defendant's illegal counterfeiting and infringing actions caused injury to Plaintiffs in New York and in this judicial district such that Defendant should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

a.   Upon information and belief, at all times relevant hereto, Defendant was and/or is systematically directing and/or targeting its business activities at consumers in the United States, including New York, through on-line platforms with Merchant Storefronts[1] (under the Seller ID, as well as any and all as yet undiscovered

---

[1] Merchant Storefronts are highly interactive commercial websites, operated via on-line marketplace websites, including, but not limited to, Amazon.com, eBay.com, Wish.com, Walmart.com, and AliExpress.com. Here, upon information and belief, the Defendant is operating a storefront with the name **PARIS BEAUTY STORE**, identified by Amazon with a Seller Identification ("Seller ID") of

accounts with Merchant Storefronts held by or associated with Defendant, its officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the United States, including New York, can view the Defendant's Merchant Storefronts that Defendant operates, uses to communicate regarding its listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery to New York, as a means for establishing regular business with New York.

d. Upon information and belief, Defendant accepts payment in U.S. Dollars, collects and pays New York sales tax, and offers shipping to New York.

e. Upon information and belief, at all times relevant hereto, Defendant has transacted business with consumers located in New York, for the sale and shipment of Infringing Products.

j. Upon information and belief, Defendant is aware of Plaintiffs' Products and is aware that its illegal infringing actions alleged herein are likely to cause injury to Plaintiffs in New York and in this judicial district specifically, as Plaintiffs conduct substantial business in New York.

k. Plaintiffs are suffering irreparable and indivisible injury and suffered substantial damages because of Defendant's unauthorized and wrongful sale of counterfeit and infringing goods.

---

38HV8ZZ1H. Based upon Amazon's rules, the Seller ID is permanently associated with the owner of the Amazon storefront regardless of whether the owner changes the online name of the storefront.

3.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 and (b) because, for example:

> a.  Defendant conducts, transacts, and/or solicits business in this judicial district; and

> b.  This is a judicial district in which a substantial part of the events or omissions giving rise to the infringement claims occurred, or a substantial part of the property that is the subject of the action is situated.

## THE PLAINTIFFS

4.      Premier Labs Ltd ("Premier Labs") is a corporation organized and existing under the laws of Israel, with a principal place of business at Shaked Street No. 21, Shoham, Israel, engaged in the business of manufacturing and worldwide advertising, marketing, distribution, and sales of its world famous skin care and makeup products ("Premier Labs Products"), promoted by the world-famous recording artist Mariah Carey, and appearing internationally in such magazines as In Style, Vogue, Cosmopolitan, marie claire, Elle, and many others.

5.      Premier North America Inc. ("Premier North America") is a corporation organized and existing under the laws of the State of Florida, having its principal place of business at 1321 NW 65th Place, Fort Lauderdale, Florida 33309.

6.      Premier North America is the sole and exclusive licensee of the Premier Labs Products in North America.

7.      Through its authorized distributor, ***Official Skincare***, operating the Merchant Storefront Official Skincare on Amazon.com with SELLER ID AJ480XS5ET0OA, the Premier Lab Products are distributed throughout North America, including within this district.

8.      The recent explosion of counterfeiting and infringement over the Internet, including through online marketplace platforms, has created an environment that requires licensees and brand owners, such as Plaintiffs, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and Plaintiffs from the ill effects of confusion and the erosion of the goodwill associated with their brand and products.

9.      Plaintiffs devote a significant amount of time, energy, and resources toward protecting the value of their brand, products, name, and reputation. By allowing end-user consumers to purchase their products only from itself or from Authorized Retailers who are required to follow the quality controls and other requirements in the Premier Labs Terms, Premier Labs ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the Premier Labs brand. In the highly competitive skin care and cosmetic consumer market, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

10.      Indeed, the Plaintiffs promote their quality control online:

"Premier Dead Sea Cosmetics is a professional company and employs various quality controls to ensure that when customers order Premier Dead Sea products, they receive items that match the condition they were intended to be received in by Premier Dead Sea. ***Official Skin Care is the only authorized distributor of Premier Dead Sea Cosmetics Products for sale on the Amazon platform. As such, any warranty/guarantee in the United States or Canada is honored only with valid proof of purchase from the Official Skin Care Amazon storefront, to ensure that our rigorous quality controls are maintained until customers receive our products.*** Please beware of shopping from unauthorized sellers and/or websites which may sell inauthentic Premier Dead Sea Cosmetics products. A possible indicator of a damaged, non-genuine item is a low price point. Do not use unsealed products (without its original cellophane wrap). Damaged skin care products may have an irreversible negative effect on the face."

Available at https://www.premierdeadsea-usa.com/terms-condition (last visited on December 8, 2025).

11.     To ensure quality by authorized resellers, Plaintiffs also require audits as described on Plaintiffs' website:

> Premier has been performing audits to our Distributors since 2012. Audits cover social, environmental, health, safety, and labor-standard criteria. The audits are conducted by authorized parties. These audits apply to the global supplier network within Premier's supply chain.
>
> *Id*. at ¶ 18.

12.     Moreover, since unauthorized sellers, like Defendant, do not have quality control obligations and are not monitored and audited, consumers who purchase Plaintiffs' products from unauthorized sellers are not entitled to the warranties and 30-day money-back guarantee provided by Plaintiffs.

13.     In short, unauthorized resellers, like Defendant, are not subject to any of the quality control standards that protect consumers and the brand.

## THE DEFENDANT

14.     Upon information and belief, The Defendant, Beauty Paris LLC d/b/a Beauty Paris Store, is a Delaware Corporation, with a registered address of "c/o A Registered Agent, Inc., 8 The Green, Ste A, Dover, Delaware 19901." This address is also posted on the Defendant's Merchant Storefront on Amazon.com.

15.     The Defendant Beauty Paris LLC is a business entity that has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendant targets its business activities toward consumers within this district and conducts pervasive business through the operation of at

6

least one highly interactive Internet based e-commerce store via the Seller ID

A38HV8ZZ1HM6OM as Paris Beauty Store on Amazon.com.

16.    Defendant, through the sale and offer to sell Infringing Products, is directly and unfairly competing with Plaintiffs' economic interest in New York and causing Plaintiffs harm within this jurisdiction.

17.    Defendant is the past and present controlling force behind the sale of products bearing and/or using infringements of the Plaintiffs' Trademark[2], as described herein, using at least the Seller ID A38HV8ZZ1HM6OM on the storefront Paris Beauty Store on Amazon.com.

18.    Upon information and belief, Defendant directly engages in using infringements of the Plaintiffs' Trademark to consumers in this district. Defendant has purposefully directed some portion of these infringing activities towards consumers in New York through the advertisement, offer to sell, sale, and/or shipment of Infringing Products into the State.

19.    Defendant has registered, established or purchased, and maintained the online marketplace storefront and Seller ID.

20.    Defendant's Internet-based business amounts to nothing more than illegal operations established and operated to infringe the intellectual property rights of Plaintiffs.

21.    Defendant's business name, i.e., the Seller ID, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods bearing and/or using Plaintiffs' Trademark are essential components of Defendant's online activities and are the means by which Defendant furthers its infringement scheme and causes

---

[2] As more fully described below, Co-Plaintiff Premier Labs LTD is the owner of the Premier by Dead Sea & Design trademark (U.S. Reg. No. 4173366 ).

harm to Plaintiffs.  Moreover, Defendant is using Plaintiffs' Trademark to drive Internet

consumer traffic to its e-commerce stores operating under the Seller ID, thereby creating and

increasing the value of the Seller ID and decreasing the size and value of Plaintiffs' legitimate

consumer marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

22.     Plaintiffs sell Plaintiffs' Products under the Plaintiffs' Trademark, Co-Plaintiff

Premier Labs Ltd is the owner of the Premier by Dead Sea & Design trademark:

(U.S. Reg. No. 4173366[3]) for "cosmetics," in class 3 and for "retail store services and on-line

retail store services, all feature the sale of cosmetics," in class 35. ("Plaintiffs' Trademark") This

is a federally registered, valid, subsisting, and incontestable U.S. trademark. (A true and correct

copy of the status and registration certificate for the Plaintiffs' Trademark is attached hereto as

**EXHIBIT 1**.)

23.     Plaintiffs use Plaintiffs' Trademark in interstate commerce to identify and

distinguish Plaintiffs' goods and services.

24.      Plaintiffs' Trademark has been used by the Plaintiffs prior in time to Defendant's

use of Plaintiff's Trademark.

25.     The Plaintiffs' Trademark has never been assigned or licensed to the Defendant in

this matter.

---

[3] On December 5, 2024, Premier Dead Sea Cosmetics Laboratories Ltd. amended its name to Premier Labs Ltd., that amendment is pending recordal in the USPTO which is why the ownership of the trademark does not currently appear as Premier Labs Ltd.

26.     Plaintiffs' Trademark is a symbol of Plaintiffs' quality, reputation, and goodwill and has never been abandoned.

27.     Plaintiffs' Product has been featured in videos and media outlets, including *YouTube* and *TikTok*.

28.     Genuine goods bearing the Plaintiff's Mark are widely legitimately advertised and promoted by Plaintiffs, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, is vital to Plaintiff's overall marketing.  Thus, Plaintiffs and their authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies.  Those strategies allow Plaintiffs and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiffs' brand and the goods sold thereunder.  Similarly, Defendant's ecommerce store is indexed on search engines and competes directly with Plaintiffs for space in the search results.

**Quality and Brand Control are Circumvented by the Online Marketplace Realities**

29.     E-commerce retail sales have exploded over the past decade. From 2009 through the second quarter of 2025, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 16.3%.  Q2 2025, updated August 19, 2025, *E-Commerce Retail Sales as a Percent of Total Sales*, Federal Reserve Bank of St. Louis, available at  https://fred.stlouisfed.org/series/ECOMPCTSA (last viewed December 3, 2025).

30.     In 2024, consumers spent $1.192 trillion on e-commerce sales, a 7.5% increase from 2023.  *See* Abbas Haleem, *US ecommerce sales in 2024 more than double those of*

9

*2019*,   Digital Commerce      360      (Mar.   3, 2025) available at

https://www.digitalcommerce360.com/article/us-ecommerce-sales/ (last viewed on December 3,

2025). The massive growth in e-commerce is being driven largely by sales on online

marketplaces. For example, in 2024, United States consumers spent more than $500 billion in

ecommerce sales on Amazon and Walmart.

31.     While online marketplaces have created a great deal of opportunity, they also

greatly challenge a brand owner's ability to control the quality and safety of its products.

32.     Unlike when purchasing products at a brick-and-mortar store, consumers who

purchase products through online marketplaces cannot touch, inspect, or interact with products

before purchasing them. Instead, consumers must trust that the product they receive from an

online order will be authentic and of the quality they expect and typically receive from the brand

owner.

33.     Online marketplaces have an exceedingly low barrier to entry, do not require

sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to

consumers whether they are an authorized or unauthorized sellers. As a result, any person who

can obtain a brand owner's products through unauthorized diversion can sell the products on

online marketplaces while concealing that they are an unauthorized seller who is outside of, and

does not abide by, the brand owner's quality controls.

34.     It is also common for unauthorized sellers to sell products that are previously

used—including products retrieved from dumpsters—as "new" on online marketplaces.   *See*

Khadeeja Safdar et al., *You Might Be Buying Trash on Amazon—Literally*, THE WALL

STREET JOURNAL, Dec. 18, 2019.

35.     In 2020, the Department of Homeland Security published a report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*     (Jan.    24,    2020),    available    at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf , at 7 (last viewed on December 3, 2025).     The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, the order will be fulfilled by an unknown third-party seller."   *Id*. at 14-15, 38. To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id.* at 35.

36.     In its 2024 annual report to its shareholders, Amazon acknowledged that third-party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. *See, e.g.,* Amazon.com, Inc.,     2024 Annual  Report (Form  10-K), at      8, *available    at* *https://s2.q4cdn.com/299287126/files/doc_financials/2025/ar/Amazon-2024-Annual-Report.pdf,* Amazon conceded that these actions are "violating the proprietary rights of others" and warned its investors that it could be liable for "unlawful activities" of Amazon's third-party sellers.

37.     Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic. A brand owner's inability to exercise control over the quality of its products can present serious risks to the health and safety of consumers.

38.    The structure, construction, and user interface of online marketplaces also pose threats to a brand owner's ability to maintain its goodwill, reputation, and brand integrity.

39.    When purchasing products on an online marketplace, customers are ordinarily not informed whether a seller of a product is authorized by the brand owner. Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the brand owner or, at a minimum, from an authorized seller that is selling under the brand owner's oversight and with the brand owner's approval. Consumers who purchase on Amazon are particularly likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing that states "Brand [name of brand]" immediately under the title of the product, even though many products are sold on Amazon by unauthorized sellers that have no relationship with the brand owner.

40.    For all these reasons, a vast number of consumers purchase products from online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the brand owner's quality controls.

41.    When a consumer purchases on an online marketplace and receives a product that is damaged, defective, or of otherwise poor quality, the consumer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

42.    Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products: online product reviews. Any consumer who is dissatisfied with a product received can post a review on the marketplace for all other consumers across the world to see. These reviews, which often remain permanently attached to products, will often criticize the brand rather than the marketplace seller that sold the product.

43.    Online product reviews significantly impact a brand's reputation. Studies and surveys consistently show that consumers place extraordinary trust in online product reviews. For instance, research has shown that 42% of online consumers now trust online reviews as much as personal recommendations from friends and family. *See* Sammy Paget, *Local consumer Review Survey 2025*, BRIGHTLOCAL, available at https://www.brightlocal.com/research/local-consumer-review-survey/ (last viewed December 3, 2025).

44.    Consumers also pay special attention to negative online reviews of products because negative reviews are generally outnumbered by positive reviews, and consumers believe negative reviews are particularly trustworthy due to their scarcity. According to one study, 85% of consumers will intentionally seek out negative reviews when shopping online. Faith Hinz, *The Growing Power of Reviews*, POWERREVIEWS, 2018, available at

https://www.powerreviews.com/wp-content/uploads/2018/03/The-Growing-Power-of-Reviews.pdf. (last viewed December 3, 2025) As a result, brands are especially harmed when consumers leave negative product reviews after purchasing from an unauthorized seller because the reviews will be widely viewed and deemed to be particularly accurate in describing a product's quality.

**Plaintiffs Are Being Damaged by Negative Online Reviews from Customers That Purchased Premier Labs Products from the Defendant**

45.    Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a brand owner's reputation and goodwill.

46.    Upon information and belief, Defendant's Infringing Products are of a quality substantially and materially different from that of Plaintiffs' genuine goods.

47.    Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor-quality products and leave negative reviews on the product listing.

These negative reviews injure consumer perceptions of the brand's quality and reputation, as well as its placement in search results, ultimately causing the brand to suffer damage to its goodwill and lost sales.

48.    Numerous consumers have written negative reviews of Premier Labs Products being sold through Defendant's online store, Beauty Paris Store.    In these reviews, many of which appear on listings of products that have been offered for sale by Defendant, consumers have given Defendant's Premier Labs Products low "ratings" and complained of receiving products that were poor quality, leaking, and missing packaging.

49.     Indeed, the following examples of negative reviews appear on the listings of genuine products sold by Plaintiffs:



**Review Details**    ✕

B0010OMN4G                                Rating    ★ ★ ★ ★ ★

Selected Review Amazon Title

Never buy this product

Selected Review Body

Terrible quality. Does not foaming at all. Should never buy this product. All products that I bought before from Dead Sea being completely different. I am very disappointed

**Review Details**    ✕

B003Y7EU16                                Rating    ★ ★ ★ ★ ★

Selected Review Amazon Title

Only half full

Selected Review Body

My container was only half full. The box it came in was plastic wrapped but for this price, the small container should be full. Very disappointing. Love the product though. I ordered again and same thing. 8/1/2025. Only half full. So aggravating. This will probably be my last time ordering. On to a new product. If I pay this kind of money, I expect it to be full. So disappointed.

**Review Details**    ✕

B003Y7EU16                                Rating    ★ ★ ★ ★ ★

Selected Review Amazon Title

Face cream a disappointment

Selected Review Body

I have been using this product for a long time. A few months ago I noticed that it had changed. The cream looks different and doesn't feel nearly as good as it used to. I'm not planning on using it again.



50.    Amazon does not allow product reviewers to identify who sold them the product. Since unauthorized sellers like Defendant do not follow any of Plaintiffs' strict quality and service controls, it is highly likely that the negative reviews appearing on the Plaintiffs' genuine Premier Labs Products listing and storefront received products from Defendant bearing the Plaintiffs' Trademark.

51.    These types of complaints are typically received about products and services provided by unauthorized resellers. To avoid these complaints and uphold their brand integrity

and reputation, Plaintiffs only permit authorized resellers following strict quality control and customer service mandates to sell to consumers.

52.    Further, Plaintiffs have completed multiple test buys that confirm that the products sold and shipped by Defendant into this judicial district are old, damaged, or simply not the product advertised on the online listing that Defendant uses to advertise and sell its inventory of Premier Labs Products. Photographic comparisons of the advertised listings and the product shipped and received from Defendant are attached to this Complaint as **Exhibit 2** and incorporated herein by reference.

53.    Thus, the Plaintiffs have confirmed that the negative reviews damaging Plaintiffs' brand and reputation are consistent with the poor quality and service demonstrated through the test buys of Defendant's online offerings.

54.    The negative reviews and confirming test buys prove that the Defendant is not complying with the strictures of the Plaintiffs' required quality control inspections, storage safe safeguards, and shipping and handling requirements demanded from their authorized retailers. Rather, Defendant is selling products bearing the Plaintiffs' Trademark that appear to have been damaged, leaking, or simply incorrect based on the advertised listing.

55.    The Defendant's subpar sales and service are driving customers to write negative reviews of the Plaintiffs' Premier Labs Products, thus harming Plaintiffs' excellent and famous reputation for quality products. These negative reviews cause the Amazon algorithm to devalue the Plaintiffs' products when reporting search results to Amazon online shoppers.

**Poor or Incorrectly Fulfilled Products that are Devoid of Quality Control, Warranty and Service Guarantees Are Materially Different and Not Subject to the Safe Harbor of the First Sale Doctrine**

56.    Ordinarily, a reseller of genuine products would be protected by the first sale doctrine, entitling them to re-sell a genuine product. *See Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 62 (E.D.N.Y. 2021)

57.    However, when the genuine product includes material differences such as quality control, warranty and service guarantees, and the re-sold product does not, the first sale doctrine does not apply, and the re-sold product is no longer genuine. *Zino Davidoff SA v. CVS Corp*., 571 F.3d 238 (2d Cir. 2009).

58.    The Defendant's failure to comply with Plaintiffs' terms for authorized resellers deprives Plaintiffs of their legal right to exercise control over the quality of the products that bear the Plaintiffs' Trademark. Further, since Defendant is not an authorized reseller bound by the terms of sale, Plaintiffs cannot monitor, audit or oversee the quality control or service failures of the Defendant as it sells the unauthorized products to customers. Also, Plaintiffs cannot correct problems with quality control or the wrong shipped item once they see the negative review posted on the Amazon store listing.

59.    Also, Defendant's unauthorized sales of products bearing Plaintiffs' Trademark mislead customers into thinking that they are buying the products from Plaintiffs and that the products are subject to the Plaintiffs' quality control, service, and Warranty.

60.    In short, the Defendant is advertising and re-selling products that share a listing with the genuine Premier Labs Products but lack any quality control, have no warranty or service guarantee, and are daily disappointing customers expecting to receive Plaintiffs' genuine Premier Labs Products. Such failings constitute material differences that remove the protections of the first sale doctrine and remove Defendant's legal right to advertise and re-sell products bearing Plaintiffs' Trademark. *Coty Inc. v. Cosmopolitan Cosms. Inc*., 432 F. Supp. 3d 345, 350

18

(S.D.N.Y. 2020) (citations omitted); *Zino Davidoff*, 571 F.3d at 243 ("goods are not genuine if they do not conform to the trademark holder's quality control standards . . . or if they differ materially from the product authorized by the trademark holder for sale.") Thus, Defendant's actions constitute trademark infringement.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### U.S.C. §§ 1114

61.    Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

62.    Plaintiffs are the owner or exclusive licensee of the Plaintiffs' Trademark.

63.    The Plaintiffs' Trademark is registered with the United States Patent and Trademark Office, and is valid, subsisting, incontestable, and in full force and effect.

64.    Defendant willfully and knowingly used, and continues to use, the Plaintiffs' Trademark in interstate commerce for purposes of selling non-genuine products bearing the Plaintiffs' Trademark on the Internet without Plaintiffs' consent.

65.    The products Defendant sells bearing the Plaintiffs' Trademark are not authorized for sale by Plaintiffs.

66.    The products Defendant sells bearing the Plaintiffs' Trademark are materially different from Plaintiffs' genuine Premier Labs Products because they are not subject to, do not abide by, and interfere with the legitimate and substantial quality controls that Plaintiffs follow.

67.    The products Defendant sells bearing the Plaintiffs' Trademark are also materially different from genuine Premier Labs Products because they do not come with the Plaintiffs'

Warranty or 30-day Money Back Guarantee, which accompanies genuine Premier Labs Products.

68.     Defendant's unauthorized sale of materially different products bearing Plaintiffs' Trademark is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Plaintiffs when, in fact, they are not.

69.     Defendant's unauthorized use of the Plaintiffs' Trademark has infringed upon and materially damaged the value of the Plaintiffs' Trademark and caused significant damage to the Plaintiffs' business relationships.

70.     As a proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm. The Plaintiffs have also suffered, and continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

71.     Plaintiffs are entitled to recover the damages caused by Defendant's infringement of the Plaintiffs' Trademark and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

72.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's infringement, and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

73.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Plaintiffs' Trademarks.

## SECOND CAUSE OF ACTION

Common Law Unfair Competition

74.    Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

75.    Defendant's unauthorized advertisement and  sale of  non-genuine products bearing the Plaintiffs' Trademark interferes with Plaintiffs' quality controls and their ability to exercise quality control over products bearing the Plaintiffs' Trademark.

76.    Defendant's  unauthorized  advertisement and  sale of  non-genuine products bearing the Plaintiffs' Trademark is likely to cause confusion, cause mistake, or deceive consumers because Defendant's use of the Plaintiffs' Trademark suggests that the products Defendant offers for sale are covered by the Plaintiffs' Warranty and are subject to, and abide by, Plaintiffs' quality controls when, in fact, they do not.

77.    Defendant's unauthorized advertisement and sale of non-genuine products bearing the Plaintiffs' Trademark is likely to cause confusion, cause mistakes, or deceive consumers because Defendant's use of the Plaintiffs' Trademark suggests that the products Defendant offers for sale are genuine Plaintiffs' Premier Labs Products when, in fact, they are not.

78.    Defendant's unauthorized advertisement and sale of non-genuine products bearing the Plaintiffs' Trademark is likely to cause confusion, cause mistake, or deceive consumers because Defendant's use of the Plaintiffs' Trademark suggests that the products Defendant offers for sale are sponsored by, authorized by, or otherwise connected with Plaintiffs when, in fact, they are not.

79.    Defendant's unlawful actions constitute active misrepresentation as to the source of the products they sell. These false representations tend to confuse consumers and induce them

to believe that Defendant's products are genuine Premier Labs Products when, in fact, they are not.

80.     Defendant's unauthorized sale   of products bearing the Plaintiffs' Trademark and unauthorized use of the Plaintiffs' Trademark in advertising infringe the Plaintiffs' Trademark and constitute unfair competition at common law.

81.     Defendant's unauthorized use of the Plaintiffs' Trademark has materially damaged the value of the Plaintiffs' Trademark, caused significant damage to Plaintiffs' business relations, and infringed the Plaintiffs' Trademark.

82.     As a result, Plaintiffs have suffered, and continue to suffer, immediate and irreparable harm.

83.     Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

84.      Plaintiffs are also entitled to punitive damages because Defendant acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

**WHEREFORE, the Plaintiffs pray for judgment as follows:**

A.     Judgment in favor of Plaintiffs against Defendant in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B.      Preliminary and permanent injunctions enjoining Defendant and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any

and all other entities owned or controlled by Defendant, and all of those in active concert and participation with Defendant (the "Enjoined Parties") as follows:

a.  Prohibiting the Enjoined Parties from advertising or selling, via the Amazon Platform, all products bearing the Plaintiffs' Trademark;

b.  ˙Prohibiting the Enjoined Parties from using the Plaintiffs' Trademark in any manner, including advertising on the Amazon Platform;

c.  Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying all products bearing Plaintiffs' Trademark;

d.  Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Plaintiffs' Trademark including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant has sold bearing the trademark; invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant has sold bearing the trademark;

e.  Requiring the Enjoined Parties to remove from the Enjoined Parties' Amazon Seller Account any reference to any of Plaintiffs' Premier Labs Products, or any of the Plaintiffs' Trademark;

f.   Requiring the Enjoined Parties to produce all invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant has sold bearing Plaintiffs' Trademark; an

g.   Requiring the Enjoined Parties to return to Plaintiffs all products bearing the Plaintiffs' Trademark that are still in the Enjoined Parties' possession, custody, or control.

C.   Preliminary and permanent injunctions enjoining Defendant, as well as its agents, servants, employees, and attorneys, and other persons in active concert or participation with it, from selling or otherwise supplying Plaintiffs' Product to unauthorized resellers;

D.   An award of attorneys' fees, costs, and expenses as allowed and stated herein.

E.   Such other and further relief as the Court deems just, equitable and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial for all issues triable by jury, including, but not limited to, those issues and claims set forth in any complaint or consolidated action.

Dated: January 27, 2026                     Respectfully submitted,

*/s/ Cory Jay Rosenbaum*

(electronically signed)
C.J. Rosenbaum, Esq
Rosenbaum & Segall, P.C.
780 Long Beach Blvd.,
Long Beach, NY 11561
CJR@AmazonSellersLawyer.com
212-256-1109
NYS Bar #2669133

24